**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN  DIVISION**

**FRANCIS EUGENE WHITE, #K6563**                                                    **PETITIONER**

**versus**                                          **CIVIL ACTION  NO.  1:04-CV-653DMR-JMR**

**LAWRENCE KELLY, Superintendent;**
**and JIM HOOD, Attorney General**                                          **RESPONDENTS**

<u>**ORDER DISMISSING PETITION WITH PREJUDICE**</u>

BEFORE THE COURT is the Petition of Francis Eugene White, #K6563, seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  And the Court, having carefully considered the record before it, as well as the Petition [Doc. No. 1], the Respondents' Response [Doc. No. 44], and the Petitioner's Traverse and Attachments [Doc. Nos. 46, 51 and 52] , and the applicable case law, is of the opinion that the grounds sought in the petition are not well taken and the Petition should be dismissed on all grounds with prejudice.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Petitioner is lawfully in the custody of Margaret Bingham, Superintendent of the Central Mississippi Correctional Facility at Pearl, Mississippi, after being convicted of aggravated assault in the First Judicial District of the Circuit Court of Harrison County, Mississippi.[1]  Petitioner was sentenced to serve a term of twenty (20) years in the custody of the Mississippi Department of Corrections.   *See* (C.P.), p. 294.

---

[1]Respondents have noted for the Court that White was previously tried on the instant charge but said trial ended in a mistrial on December 13, 2000.  *See* Clerk's Papers (C.P.), p. 190.  Respondents have noted further that the trial took place in Rankin County, Mississippi, pursuant to an "Order Changing Venue" entered by the Harrison Circuit Court.  *See* C.P., p. 210.

1

The Petitioner appealed his judgment of conviction and sentence for aggravated assault to the Mississippi Supreme Court, assigning as error the following (as stated by petitioner):

A.   It was error for the prosecutor to affirmatively state in opening that [*sic*] would be proof that there was blood on the shoes of Francis Eugene White when in fact no witness testified that there was blood on White's shoes and the prosecutor knew no witness would testify that there was blood on Francis White's shoes.

B.   The prosecuting attorney made misstatements of fact during closing argument.  This prosecutorial misconduct constituted plain error.  Further the trial court erred in not granting a new trial in light of the evidence presented at the motion for new trial on the falseness of the statements.

C.   Defendant trial counsel was ineffective for not objecting to the State's wrongful comments during opening and closing.

D.   The Court erred in denying defendant expert testimony on medical issues and on identification.  The Court erred in not allowing the defendant to present expert testimony on identification (Jack Brigham) and on Mr. White's physical abilities in 1996 as a result of his medical conditions (Dr. Gary Goulet).

E.   The errors committed at trial, if not individually, cumulatively require reversal.

On December 3, 2002, the Mississippi Court of Appeals affirmed petitioner's judgment of conviction and sentence in a written opinion.  *See* Exhibit A.  *White v. State*, 847 So. 2d 886 (Miss. App. 2002), *reh'g denied*, February 4, 2003, *cert. denied*, June 12, 2003 (Cause No. 2001-KA-01259-COA).

On May 11, 2004,  petitioner filed an "Application To File Petition For Post-Conviction Collateral Relief In The Lower Court," a "Petition For Post-Conviction Collateral Relief," and a "Memorandum Of Law In Support Of Petition For Post-Conviction Collateral Relief" in the Mississippi Supreme Court, alleging the discovery of new evidence.  Specifically, White claims

2

that the prosecutor withheld from the defense a third DNA report prepared by Identigene and dated November 30, 2000.

On July 20, 2004, the supreme court denied White's application, stating, in pertinent part, as follows:

> White asserts that he has newly discovered evidence that was not reasonably discoverable at the time of trial.  Given the evidence that was presented at trial, the panel finds that newly discovered evidence is not "of such a nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence."  Miss. Code Ann. § 99-39-5(2).  The petition should be denied.

*See* Exhibit B.

In the instant Petition for Writ of Habeas Corpus, White claims the following are in issue:

> **Ground One** - Conviction obtained by the unconstitutional failure of the Prosecution to disclose to the Defendant evidence favorable to the defendant.

> **Ground Two** - Denial of effective assistance of counsel.  Jim Davis, defense counsel, did not perform to minimum standards of a defense attorney.[2]

>> (a)   Failure to present the expert testimony of Dr. Acton and Barbara Wadsley.

>> (b)   Failure to provide timely discovery of petitioner's medical records such that said evidence would not be excluded.

>> ( c)   Failure to hire a ballistics expert.

---

[2]The individual claims of ineffective assistance of counsel that follow are summarized by respondents from petitioner's narrative on this ground.

(d)   Failure of trial counsel to object to comments by the prosecutor during opening statements and closing argument regarding the blood on petitioner's shoes, travel times, and the phone call from Gulfport.

**Ground Three** - It was plain error, for the prosecutor to affirmatively state in opening and closing that there was proof that the victim's blood was on petitioner's shoes.

**Ground Four** - The prosecutor made further misstatements during closing about time of travel not in evidence and that petitioner made a phone call close to the crime scene, twenty minutes before this assault.

**Ground Five** - The court erred in denying petitioner expert witnesses and testimony on medical issues that could have rebutted critical state evidence, a crime scene investigator, a ballistics expert and eye-witness identification expert.

**Ground Six** - The errors, misstatements, and assertions of personal knowledge made by the prosecutor throughout this trial, plus the evidence not investigated by the state, and finally exculpatory evidence, that was the main corroborating evidence to the victim was withheld from petitioner, his attorney and his DNA expert, Dr. Ronald T. Acton, University of Alabama. If not individually, cumlatively [*sic*], require reversal and require this Court to vacate this sentence and remand for retrial.

**Ground Seven** - This conviction is a fundamental miscarriage of justice. The greater weight of the evidence was in favor of the defense. This was not a close call in this case. Evidence presented by the defense far outweighed the States. The State had one (1) witness that testified that Petitioner was the assailant. The [*sic*] had eleven witnesses that clearly showed Petitioner could not have been the assailant in this case.

## II. LEGAL ANALYSIS

The Respondents submit that petitioner presents claims in this federal habeas corpus petition which have not been presented to the state's highest court in a procedurally proper manner and which are now procedurally barred due to petitioner's own procedural default. *Sones*

4

*v. Hargett*, 61 F.3d 410 (5th Cir. 1995)(when state remedies are rendered unavailable by the petitioner's own procedural default, federal courts are barred from reviewing those claims.); *see also Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)(federal review of a claim is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule); *see also Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)(an inmate's failure to present claims to the proper state court creates a procedural default for purposes of federal habeas review).

 A. Procedural defaults

 The Respondents argue to the Court that by failing to present a portion of Ground Two (claims (a), (b), ( c), a portion of Ground Five (claims pertaining to the crime scene investigator and the ballistics expert) and Ground Seven to the state's highest court, that the Petitioner White has failed to proceed in a procedurally proper manner. "If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). By failing to raise ineffective assistance claims (a), (b) and ( c) in Ground Two, the claims pertaining to a crime scene investigator and ballistics expert in Ground Five, and Ground Seven, White waived having the Mississippi appellate courts review the issues on the merits. Accordingly, this Court is of the opinion that White has thus defaulted a portion of Ground Two, a portion of Ground Five and Ground Seven, and this Court is now precluded from reviewing the claim.

 Additionally, this Court agrees with Respondents that Petitioner White cannot show "cause" under the "cause and prejudice" test necessary to allow this Court to reach the merits of

the claims despite the procedural bar because there has been no credible showing that an external impediment existed to prevent him from raising and discussing the claims properly as a ground for relief in state court.[3] *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). Therefore, absent a showing of "cause," it is unnecessary for this Court to consider whether there is actual prejudice. *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996). Furthermore, there will be no "fundamental miscarriage of justice" if White's claims are not heard on the merits; the "fundamental miscarriage of justice" exception is even more circumscribed than the cause and prejudice exception and is confined to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). Petitioner White contends in his Traverse that a "Manifest of injustices" has occurred. [Doc. No. 46-1, p. 19]. To establish the requisite probability that he was actually innocent, the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). This Court is of the opinion that White has not met this standard; such has not been shown by credible evidence to establish that a fundamental miscarriage of justice will result if White's claims are not considered on the merits.

---

[3]The Respondents submitted to the Court that it is recognized that attorney error has in certain circumstances been held to constitute cause to overstep procedural default. However, in order to argue ineffective assistance of counsel as cause to overstep the procedural bar, White would have had to raise and exhaust a claim of ineffective assistance of counsel for failure to raise the issues in Grounds Two, Five and Seven on appeal as an independent claim in state court when he filed his motion for post-conviction relief. *See Edwards v. Carpenter,* 529 U.S. 446, 452, 120 S. Ct. 1587, 1591-92 (2000); *see also Murray v. Carrier,* 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986). White chose not to do so; and, therefore, the Court is of the opinion that attorney error cannot constitute cause in the instant case as to those claims.

Accordingly, habeas relief cannot be granted with respect to White's claims in a portion of ground Two, a portion of Ground Five and Ground Seven of the instant petition.

B. Issues of State Law

The Respondents have answered Petitioner's Petition further by submitting that the claims in Ground Five are issues of state law and as such, are not subject to habeas review. A state's interpretation of its own laws or rules is no basis for federal habeas corpus relief since no constitutional question is involved. *Bronstein v. Wainwright,* 646 F.2d 1048, 1050 (5th Cir. 1981). The role of a federal court is more limited than that of the state appellate court. *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir. 1983) *see also Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir. 1981). Federal courts hold no supervisory power over state judicial proceedings, and federal habeas corpus relief is appropriate only when a conviction has been obtained in violation of some constitutionally protected right. *Smith v. Phillips,* 455 U.S. 209, 221 (1981). A "mere error of state law" is not a denial of due process. *Engle v. Isaac,* 465 U.S. 107, 121 and n.21, 102 S.Ct. 1558 and n.21, 71 L.Ed.2d 783 (1982).

In Ground Five, White argues that the trial court erred in excluding expert testimony from Dr. Gary Goulet, a chiropractor, and Dr. Jack Brigham, an eyewitness identification specialist.[4] The appellate court addressed the exclusion of the expert testimony from the chiropractor, in pertinent part, as follows:

> White provided discovery regarding the chiropractor on the Friday preceding the Monday trial date. White intended the expert's testimony to demonstrate that White was physically unable to kick the door in and assault Ford. The trial court found that White had medical records suggesting this diagnosis as early as April 1997, and an obligation to prepare such a defense before the eve of trial. The court found that the prosecution did not have sufficient opportunity to

---

[4]As previously noted, White's claims pertaining to the exclusion of testimony from a crime scene investigator and a ballistic's expert were not presented to the state's highest court for review and are therefore precluded from review in the instant petition.

meet the evidence.  The State's opportunity for  rigorous cross-examination would not likely have sufficed.

The trial court and the State treated the matter as a discovery violation. We agree. . . .

On the eve of this trial, the judge entered the order that he deemed just. White had been under indictment for almost four years.  The alleged diagnosis of this debilitating condition was of similar vintage.  A substantial delay in the trial would have resulted, as the State's own expert would have had to be selected, would have needed to examine White, and then reached conclusions.  We find it within the trial judge's discretion to exclude this evidence.

*See White*, 847 So. 2d at 892.  As to the eyewitness identification expert, Dr. Brigham, the appellate court found that the trial judge's exclusion of this expert's testimony was based on both timeliness concerns and a finding that the evidence did not rely on proven "'scientific principles.'" *Id.* at 893.  The court of appeals identified three factors that must be considered in determining whether to permit expert testimony: "(1) whether the subject matter of the proffered testimony is of the sort on which expert opinion evidence will assist the finder of fact; (2) whether the area of expertise is scientifically established so that valid opinion may be produced within the area; and, (3) finally whether the witness is qualified."  *Id.* (citation omitted).  Finding that the trial judge had not erred in excluding the testimony of Dr. Brigham, the court stated as follows:

The trial judge was disinclined to allow the testimony under both the first and second factors.  The judge seemed especially concerned that notice of this proposed testimony was being offered on the eve of trial.  We have been shown nothing suggesting that the science about which this expert was going to testify is generally accepted.  The merit of refusing this evidence because of the dilatoriness in presenting it is supported by the same arguments as we have discussed regarding the chiropractor who was not allowed to testify.  We find that both witnesses could be excluded.

*Id*.

8

The rulings of state courts on evidentiary matters are solely issues of state law and as such a claim challenging the state court's ruling on the admissibility of certain evidence under state law is precluded from review by this Court;  "[a]  state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir.1994).  "[I]n reviewing state court evidentiary rulings, the federal habeas court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted); *see also Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999).  "Erroneous exclusion of evidence is fundamentally unfair if the evidence was material in the sense that it was crucial, critical, and highly significant." *See Porretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987).

The findings by the state court are entitled to due deference pursuant to 28 U.S.C. § 2254. Accordingly, respondents submit that in light of the state court's findings, White is not entitled to habeas relief on his claim because the exclusion of the evidence was neither erroneous nor would the evidence have been 'crucial, critical, and highly significant' to the jury's determination. *See Porretto,* 834 F.2d at 465.  Had the court allowed the testimony of the chiropractor, the trial would have been delayed to allow the state time to obtain its own experts to rebut the testimony. The Respondents argue to the Court that such rebuttal would have in all likelihood negated Dr. Goulet's testimony in light of the fact that his opinion was not based on an actual diagnosis of the disease that White claimed to have which would have prevented him from kicking at a certain height.  *See* State Court Record[5] (S.C.R.) at 872.  Further, as the prosecution pointed out during

---

[5]Respondents have noted for the Court for clarification, and because petitioner, at times, cites to testimony given in the first trial, that the transcript of the testimony of the case in chief from the first trial is contained in the state court record at pages 189-748. The transcription of the

the hearing, Dr. Goulet, being a chiropractor and not a medical doctor, would not have been qualified to elaborate on any possible diagnosis of the disease. *Id.*  Additionally, also noted by the prosecution, the testimony from Dr. Goulet that the defense proposed at the hearing (which was not included in Dr. Goulet's written opinion) went far beyond his  expertise and likely would have been inadmissible. *Id.*  Given the eyewitness identification of White and the rather flawed opinion to be solicited from Dr. Goulet, this Court agrees with the Respondents that the chiropractor's expert testimony would have made little difference to the outcome of the trial.

Similarly, the proposed testimony of the eyewitness identification expert, Dr. Brigham, also would not have played a crucial role for the jury as the victim's identification of the shooter as White was unequivocal. *Id.* at 910.  Ford testified that he not only recognized White by sight but also knew it was him by his voice as soon as White stated, "You know who I am, don't you?" *Id.* at 912.  In addition, Ford confidently told the police that White was the shooter almost immediately after the shooting. *Id.* at 957, 983.  Regardless of any scientific theory that Dr. Brigham might have proposed regarding the reliability or lack thereof of eyewitness identification, the jury had Ford's identification given the circumstances surrounding the shooting.

"[M]ere errors of state law are not the concern of this Court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1993).  The assertion of the violation of such rights here are without a basis, and the alleged violation of state rules, without more, is not a cognizable ground for habeas corpus relief.  *Edwards v. Butler,* 882 F.2d 160, 164 (5th Cir. 1989) (citations omitted).  Accordingly, White is not entitled to relief for his claims in Ground Five.

---

second trial begins on page 750.

C. State Court Denial on the merits

In reviewing the Petition, this Court agrees with the Respondents that the claims in a portion of Ground Two, Ground Three, Ground Four, a portion of Ground Five[6] and Ground Six were reviewed by the Mississippi Court of Appeals on direct appeal and denied on the merits. Likewise, the claim in Ground One was reviewed by the Mississippi Supreme Court on post-conviction motion and was denied on the merits. As a result, under the Antiterrorism and Effective Death Penalty Act of 1996, (the "AEDPA") 28 U.S.C.A. § 2241, *et seq.*, and because these issues were decided on the merits, habeas relief cannot be granted with respect to these claims. 28 U.S.C. § 2254(d) and § 2254(e)(1). 28 U.S.C. § 2254(d) provides:

> (D) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The first exception, subsection (d)(1) applies to questions of law or to mixed questions of fact and law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5thCir. 1997). The record reflects that the claims in Grounds One, Two, Three, Four, and Six are mixed questions of law and fact. Therefore, subsection (1) of § 2254(d) governs the claims and dictates that a federal court cannot grant habeas relief to the petitioner unless it determines that the state court's

---

[6]Ground Five is addressed as a state law issue in Respondents's Response/Answer (see paragraph 6).

decision involved an unreasonable application of the law to the facts. The "unreasonable application" standard of review of a state court decision does not mean that a federal court may grant habeas relief based on its simple disagreement with the state court decision; this would amount to nothing more than *de novo* review. *See Williams v. Cain*, 125 F.3d 269, 276-77 (5th Cir. 1997). Unless there is such an unreasonable application, there exists a presumption that state court factual findings are correct. *Knox v. Johnson*, 224 F.3d 470 (5th Cir. 2000).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court concluded that §2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id*. at 1523. A state court's decision is "contrary to" federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Id*. at 1523. A state court's decision involves an "unreasonable application" of federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies the principle to facts of the prisoner's case; this application of law to facts must be <u>objectively</u> unreasonable. *Id*. at 1521 (emphasis added). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. *See also Ramdass v. Angelone*, 530 U.S. 156, 120 S.Ct. 2113 (2000); *Chambers v. Johnson*, 218 F.3d 360 (5th Cir. 2000); *Hill v. Johnson*, 210 F.3d 481 (5th Cir. 2000).

Nevertheless, under § 2254(d)(2), grounds may still merit review if those facts to which the appellate courts applied the law were determined to be unreasonable in light of the evidence presented. Because the state appellate courts are presumed to have determined the facts

12

reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As set forth herein, Petitioner White has failed to meet his burden and accordingly this Court is barred from reviewing issues already decided on the merits.

In Ground One, White argues that the prosecutor withheld exculpatory evidence from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) [see Doc. No. 51]. Specifically, White claims that he was not provided with a DNA analysis report prepared by Identigene, Inc., on November 30, 2000. White asserts that the defense was provided with two DNA reports prepared by ReliaGene on July 14, 1997 (reference is also made that this report was dated July 21, 1997) and March 17, 1998, respectively. [See Doc. No. 51] White claims that he became aware of this third report when he received it by mail in September of 2003 from an anonymous source at the court. *See* Exhibit A to "Petition."; White argues that the report from Identigene would have been significant to his case. Petitioner indicates that this third report "throws a harsh, sceptical [*sic*] light upon the accuracy of ReliaGene's test reports" since Identigene was unable to duplicate the results found by ReliaGene that the victim could not be excluded as a donor of the DNA evidence found on White's shoes.[7]

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. More specifically, "[t]o establish a *Brady* claim, a habeas petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material." *Spence v. Johnson*, 80 F.3d

---

[7]As noted previously, White raised the claims in Ground One in his motion for post-conviction relief which was ultimately denied by the Mississippi Supreme Court. *See* Exhibit B.

989, 994-995 (5th Cir. 1996) (citation omitted).   In the instant case, White's claim that the

Identigene report was not provided to the defense is contrary to the record.  During the first trial,

the court conducted a hearing outside the presence of the jury to determine the admissibility of

the DNA evidence.[8]  *See* S.C.R. at 476-515.  At the end of this hearing after the judge ruled that

the evidence was admissible, the prosecutor made the following statement regarding a collateral

matter:

> Ms. Forster: Your Honor, one more thing for the record.  On the break I
> asked Mr. Davis as Ms. Montgomery testified to the repackaging of the exhibits.
> As the Court is well aware, sometime in November we had the State Crime Lab
> send the exhibits to – the cuttings and things to another laboratory for additional
> testing utilizing the new STR technique, and we have given Mr. Davis a copy of
> that report, which was [*sic*] there was not a sufficient quantity for them to achieve
> a DNA profile.  That is the reason that there was repackaging.
>
> We had already come down here – she was getting ready to leave and
> come down, Debbie Haller from the State Crime Lab, who is the person that did
> the repackaging and sent that off.  And I asked Mr. Davis if he was going to
> require us to bring her here just solely for the purpose of that chain and that
> explanation, and he told me, no, that it would not be necessary.

*See* S.C.R. at 515 (emphasis added).  In response to the prosecutor's statement, Mr. Davis stated,

"That's correct, your Honor."  *Id*.  As such, the third DNA report was provided to the defense

and because the test was inconclusive due to an insufficient DNA quantity, Davis had no reason

to bring up the third test during the second trial; this allegation is without merit.  Moreover, the

Identigene report simply concluded that the DNA sample from White's shoes did not yield

enough DNA so that a comparison could be made and is not otherwise exculpatory.  *See* Exhibit

A to "Petition."

In Grounds Three and Four, White alleges misconduct by the prosecution.  In Ground

Three, White argues that the prosecutor's statements during both opening statements and closing

---

[8]Respondents noted for the Court that White was represented by Jim Davis at both the
first and second trials.

14

arguments, that blood was found on petitioner's shoes, was a knowing violation of the trial

court's order prohibiting any reference to the red stain on petitioner's shoes as blood.[9]  The order

to which White refers was entered pursuant to petitioner's Motion In Limine[10] filed prior to the

first trial.  During the motion hearing, White requested that the DNA evidence found on

petitioner's shoe not be identified as blood because no one had conclusively identified the

evidence as blood.  *See* S.C.R. at 99.  The judge asked the prosecutor what kind of bodily fluid

the DNA evaluator had found, to which the prosecutor responded:

> Your Honor, the procedure is that the evidence is first processed through conventional serology.  The conventional serology reports the possible presence of blood, but that the sample is insufficient for further conventional serology testing, which means that they would not test further to distinguish if it's human blood or it's animal blood, because they don't want to use up the sample so there is a sufficient quantity remaining in order to perform DNA testing.
>
> When they perform DNA testing, they are – you have the same DNA, whether it's skin, whether it's blood, whether it's seminal fluid, whether it's saliva.  And so they do a profile for the purpose of determining whether or not this profile can exclude or not exclude known individuals.  And they don't look for or concern themselves at that point with whether or not it's blood or seminal fluid or whatever.
>
> I think that this goes solely to weight and credibility.  It is not a matter of something that should be excluded.  The serologist does in their test find the possible presence of blood, and that is why, in fact, the samples were sent for DNA, because there was the possible presence of blood found.

*See* S.C.R. at 99-100.  Thereafter, the judge issued the following ruling:

---

[9]The court of appeals found White's claim regarding the prosecutor's alleged inappropriate comments about blood on petitioner's shoes to be procedurally barred because defense counsel did not object to the comments.  *See White*, 847 So. 2d at 890.  The court, however, went on to discuss whether the procedural bar could be set aside upon a violation of a fundamental constitutional right and ultimately determined that a constitutional right had not been threatened.  *Id*.

[10]Respondents have noted for the Court that petitioner's Motion In Limine in which petitioner requested that the stain on White's shoe not be identified as blood had seven subparts and the issue in question was subpart five of that motion.  *See* S.C.R. at 89, 99.

> I'm going to allow the serologist – apparently this is Cathy Brock – to testify with – consistent with what's in her report, wherein she stated the possible presence of blood was identified on the left shoe.  And the reason she was not able to definitively make that determination, because apparently she was afraid that she would use the rest of the sample, and it would not be any left for DNA testing.
>
> So I'm going to allow that, Mr. Davis.  You can just use that – cross-examine her, just say all it is is a possible presence.  You can't say it's blood.
>
> So I think that she ought to be able to give that explanation.  I'm going to overrule that motion.

*See* S.C.R. at 102.  During pre-trial motions prior to the second trial, the court again stated that the serologist, Cathy Brock, could testify consistent with her report and could say the sample contained the possible presence of blood.  *See* S.C.R. at 842.

During opening statements, the alleged offensive statements by the prosecutor were as follows:

> But Long Beach Police, they get his [White's] shoes.  What does the Crime Lab find on the shoes, but some blood.  And they take that and they send it to ReliaGene Technology.  And ReliaGene Technology performed DNA, and guess whose blood it is.  It's the victim's, Bill Ford.  Defendant was there, and he did the shooting.

*See* S.C.R. at 893.  White likewise takes issue with the following statements made by the prosecutor regarding blood on petitioner's shoes during closing arguments:

> Ladies and gentlemen, we don't have contamination.  What we have is the victim's blood on the defendant's shoes, not just one, but both of them.  That's identification.  That alone proves beyond a reasonable doubt that the defendant shot Bill Ford.  One in 14 million people.  That's how far you'd have to go to even possibly find someone else with that same DNA profile.
> * * *
> And the blood on the shoes. . . .
> * * *
> You all know from your common sense that if you shoot somebody, blood splatters –
> * * *
> And when it does that and you're standing close enough to shoot somebody like this guy was shot, you're going to get some on the shoes, and on the top.  It's what makes sense.

*See* S.C.R. at 1487-88, 1511-1512.

On direct appeal, the appellate court found no reversible error resulted from the prosecutor's opening statements, finding, in pertinent part, as follows:

Procedural waiver may be set aside when a fundamental constitutional right is threatened. *Conerly v. State*, 760 So. 2d 737, 740 (Miss. 2000). However, opening and closing arguments are not evidence and are not governed by evidentiary standards. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2000). Here, we cannot find that such prejudice arose, particularly as White incorporated the evidence into his own defense, as will be discussed shortly.

Whether these comments went beyond proper argument is not altogether clear. Certain witnesses were allowed to refer to their conclusions about stains on White's shoes and to mention that the substance may have been blood. The presence of blood was unsubstantiated, but potential. The question becomes whether a prosecutor could argue as fact that the only reasonable explanation from the evidence was that the stain must have been blood.

There is wide latitude for counsel in both opening and closing arguments, expanding beyond mere facts and proof to include such "deductions and conclusions [one] may reasonably draw therefrom, and the application of the law to the facts." *Wells v. State*, 698 So. 2d 497, 506 (Miss. 1997). Here, a reasonable inference existed that spots found on White's shoes which contained DNA matching the victim were in fact blood. Substantial DNA evidence was offered at trial. Pictures depicting the crime scene revealed large amounts of blood. While the serologist could not offer the potentially damning testimony that the stains found on White's shoes were composed of blood, the evidence certainly was consistent with the inference argued by the State.

Whether the State went beyond the logical reach of the order regarding this evidence is ultimately not necessary for us to decide. It is enough for us to conclude, and we do, that no fundamental right of the defendant was violated when the State argued what the jurors quite likely would have inferred anyway.

*See White*, 847 So. 2d at 890. In regards to the prosecutor's references to the blood on petitioner's shoes during closing arguments, the appellate court stated:

"A closing argument is intended to summarize in a fair even if partisan fashion all the relevant evidence that would support a guilty verdict. *Sheppard,* 777 So.2d at 661. Regarding the State's closing remarks on the bloodstains, nothing in this

argument differentiated it from the State's opening remarks on the same subject.

Still, we find no reversible error.

*Id*. at 691.

In Ground Four, White challenges statements made by the prosecutor during closing arguments regarding time of travel from the crime scene to Moss Point, Mississippi, as well as statements regarding a telephone call made from the Naval Home in Gulfport, Mississippi, twenty minutes prior to the shooting.  As to the alleged erroneous statements regarding the travel time, White argues that the prosecutor misled the jury by stating that the travel time from the crime scene to Moss Point was twenty-six minutes.[11]  White submits that the testimony did not reflect a possible driving time of twenty-six minutes and the prosecutor knew such a statement to be false but argued the erroneous time period anyway thereby prejudicing the jury against him.

On appeal, the appellate court addressed the alleged misstatement regarding the driving time as follows:

> Next, White had relied substantially on an alibi. The alibi included the impossibility of his presence at the crime scene due to distance and driving times from his supposed location at a similar time as the assault.  There was conflicting testimony regarding the length of time necessary to travel from Long Beach to Moss Point.  Nevertheless, testimony was offered on behalf of the State that the

---

[11]The prosecutor made the following statements regarding travel time during closing arguments:
> And he [Officer Kenny Allen] gets out and goes in the Long Beach Police Station and gets a tape recorder, and we don't have any bloody footprints or anything in the Long Beach Station.
>
> Then he comes back out and he gets in Lieutenant Barrett's car and he drives to Moss Point, in 26 minutes.

*See* S.C.R. at 1486.  Respondents have submitted to this Court  that White is incorrect in his assertion that the prosecutor represented the twenty-six minute drive time to be from the crime scene to Moss Point.  The prosecutor's statement indicates the twenty-six minute drive time was not from the crime scene to Moss Point, but, rather, from the Long Beach Police Station to Moss Point.

> drive took as little as twenty-six minutes.  Other evidence, not mentioned by the prosecution in its closing, suggested it would have taken longer.  Either party may argue from evidence facts favorable to its case even if the record reflects other facts which contradict them.  Here, jurors were charged with reviewing the conflicting testimony, and it was their decision as to witness credibility and whom to believe.  It was not error for the prosecutor to argue the evidence most favorable to guilt.

*See White*, 847 So. 2d at 891.

White also argues that it was improper for the prosecutor to make comments regarding a phone call made from the Naval Home and charged to petitioner's credit card twenty minutes prior to the shooting. White submits that because there was no testimony regarding this specific phone call, the phone call was not in evidence; and, therefore, it was error for the prosecutor to say anything about the call.   The statements by the prosecutor regarding the phone call at issue were as follows:

> And I want you to take a look at this phone bill, and think about your life experiences.  First of all, the call from his daughter is operator assisted.  It does not say collect.
>
> Then there's a phone call that is underlined.  That's one of those phone calls that is charged to his credit card, just like all the ones he did from the hospital, and it's a phone call October 22nd at 12:52 p.m. from Gulfport, Mississippi.  He's in Gulfport 20 minutes before the shooting in Long Beach.  He made a phone call and used his credit card, just like he did from the hospital.  Gulfport, Mississippi, ladies and gentlemen is right here.  And 104 Calnito is right here.  You think you can get from there to there in 20 minutes, when you can get from there to there in 26?  You betcha.  The phone call is underlined.  You'll be able to see it.

*See* S.C.R. at 1510-11.  On appeal, the appellate court held as follows:

> Finally, there was a phone record discussed during trial. White's essential point is that no one referred to a specific entry on the phone records during the testimony. Therefore, he alleges that it was improper for the prosecution to

comment on it. However, White offered the entire bill with all the telephone calls
for that time period into evidence. He relied on it substantially to corroborate his
alibi. In her closing argument, the prosecutor called the jury's attention to a phone
call which tended to discredit White's theory.

      It is error to argue facts prejudicial to the defendant which are not in
evidence or reasonably inferable from facts in evidence. *Blue v. State*, 674 So. 2d
1184, 1214 (Miss. 1996), overruled on other grounds in *King v. State*, 784 So. 2d
884, 889-90 (Miss. 2001). Those are not the arguments that the State made.
Rather, it was commenting on evidence before the jury and which was available to
it. In offering the phone bill as evidence, White ran the risk that facts damaging to
his cause could be argued from it. There was no necessary predicate that someone
had drawn a witness's attention to that part of the exhibit before closing argument
could use it.

*See White*, 847 So. 2d at 891.

    "[A] criminal conviction is not to be lightly overturned on the basis of a

prosecutor's comments standing alone, for the statements or conduct must be viewed in

context; only by so doing can it be determined whether the prosecutor's conduct affected

the fairness of the trial." *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1044 (1985).

Further, three factors have been used to determine whether improper comments by a

prosecutor warrants reversal: (1) the magnitude of the statement's prejudice; (2) the effect of any

cautionary instructions given; and (3) the strength of the evidence supporting the conviction. *See*

*United States v. Wise*, 221 F.3d 140, 153 (5th Cir. 2000); *United States v. Palmer*, 37 F.3d 1080,

1085 (5th Cir. 1994).

    The record supports the appellate court's determination that none of the aforementioned

statements by the prosecutor warranted reversal in this cause.  And, in any event, proceeding with

an analysis pursuant to the three factor *Wise* test, *supra*, the Court is of the opinion that none of

the comments warranted reversal.  Looking first to factor two, *supra*, the effect of any cautionary

instructions cannot be determined as there were no such instructions given.  Furthermore, as set

forth herein, there was no need to give any cautionary instructions because there was no prejudice

and no need for defense counsel to make an objection to the prosecutor's statements at issue.  As to factor three, regarding the strength of the evidence supporting the conviction, the evidence against White was overwhelming. The record reflects that prior to the shooting, White became suspicious that his wife was having an affair and went so far as to hire a private investigator to determine who she was seeing and where she was living. *See* S.C.R. at 1374.  Harvey Frank Hulse testified that White stated to him that if he [White] ever caught anyone with his wife, he would kill them.  *See* S.C.R. at 970.  White admitted that he had been to his wife's house in Long Beach several times prior to the shooting and had even gone inside the house when his wife was not home. *See* S.C.R. at 1375.  The testimony of Alan Brown revealed that White told him that he saw his wife kissing an older man.  *See* S.C.R. at 1089.  Melissa Temple testified that she sold White a gun prior to the shooting.  *See* S.C.R. at 1081.  Finally, there was the eyewitness identification of White as the shooter by the victim, Wilburn Ford, as well as the fact that Ford's DNA was found on Whites shoes.  *See* S.C.R. at 900-943, 952, 983, 1129, 1240.  Lastly, the first factor cannot be shown,  *i.e.*, the magnitude of the statements' prejudice, as the comments were not improper; the prosecutor's comments regarding the bloodstains on petitioner's shoes were not in violation of the court's order pursuant to White's motion in limine as the court overruled the motion.  *See* S.C.R. at 102, 842.  Furthermore, despite the court's overruling of the motion, the judge did state that the serologist, Cathy Brock, could not testify as an expert that the stains on the shoes were blood.  *Id.* The judge, however, placed no such limitation on the attorneys. Moreover, the theory of the defense regarding how the victim's DNA got on the petitioner's shoes was that Officer Kenny Allen stepped in blood at the crime scene and then inadvertently transferred or cross-contaminated the blood to White's shoes while Allen was conducting the gunpowder residue test; this theory is repeatedly reflected in the record from opening statements

through closing arguments.  *See* S.C.R. at 895-896, 1115-1123, 1142, 1169, 1177, 1186, 1195-1201, 1248-1252, 1494-1496.

There also was no prejudice shown from the prosecution's statements pertaining to travel time from the Long Beach Police Station to Moss Point; Officer Kenny Allen clearly testified that the drive time was twenty-six minutes.  *See* S.C.R. at 1179.  Further, as the appellate court pointed out, there was other testimony indicating varying time frames for the drive from Long Beach to Moss Point for the jury to consider and give whatever weight they might to it.  *See White*, 847 So. 2d at 891.

Finally, turning to the phone call from the Naval Home, it is undisputed that the defense offered the entire phone bill into evidence.  *See* S.C.R. at 887, 1314.[12]  As noted by the appellate court, because the entire phone bill was made a part of the evidence, it was not improper for the prosecutor to direct the jury's attention to that particular phone call.  *See White*, 847 So. 2d at 891.  Defense counsel also had the opportunity to explain the phone call while White was on the stand.   Accordingly, habeas relief as to Grounds Three and Four is denied as the state supreme court's decision was not contrary to or an unreasonable application of clearly established federal law.

In Ground Two, White raises four claims of ineffective assistance of counsel, three of which, as previously discussed, are precluded from habeas review due to White's failure to present the claims to the state courts.  As such, the only claim of ineffective assistance of counsel that is properly before this Court is petitioner's allegation that defense counsel was ineffective in failing to object to comments by the prosecutor during opening statements and closing arguments.  Specifically, White's argument is threefold: (1) defense counsel should have

_____

[12]The  phone bill at issue was marked as Exhibit 40 (*See* S.C.R. at 1314) and entered into evidence by defense counsel as part of a group of exhibits being entered into evidence by agreement between defense counsel and the prosecution.  *See* S.C.R. at 887.

objected when the prosecutor stated during opening statements and closing arguments that the red stains on petitioner's shoes was blood;  (2) defense counsel should have objected when the prosecutor knowingly misrepresented the travel time from Long Beach to Moss Point as being twenty-six minutes, a fact allegedly not in evidence; and  (3) defense counsel should have objected when the prosecutor told the jury during closing argument that a telephone call on the phone bill submitted into evidence by the defense was placed by petitioner from the Naval Home in Gulfport twenty minutes before the shooting, also a fact allegedly not in evidence.

The appellate court, citing *Strickland v. Washington*, 466 U.S. 687, 104 S.Ct. 2052, L.Ed.2d 674 (1984), found no ineffective assistance of counsel.  *See White*, 847 So. 2d at 892.

To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland* by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance.  *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).  A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of his claim.  *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998)

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight.  *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). Counsel's services are not evaluated in a vacuum, and all circumstances are considered in determining whether the performance was reasonable under prevailing professional standards. *Lavernia*, 845 F.2d at 498.  Finally, there is a strong presumption that counsel has exercised

reasonable professional judgment.  *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

　　　To prove prejudice, petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable.  *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).  To meet the prejudice prong, petitioner must affirmatively prove and not merely allege prejudice.  *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.), *cert. denied*, 476 U.S. 1143 (1986).  There is no constitutional entitlement to error free representation.  *Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981), *cert. denied*, 466 U.S. 949 (1982).

　　　Counsel's performance is considered deficient if "it falls below an objective standard of reasonableness" as measured by professional norms.  *Strickland*, 466 U.S. at 688.  A determination must be made of  whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).  In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citation omitted).   In scrutinizing counsel's performance, every effort must be made to "eliminate the distorting effects of hindsight," and deficiency should not be assumed merely because the Court disagrees with trial counsel's strategy.  *Id*. (citations omitted).

　　　The underlying facts of White's claims of ineffective assistance of counsel are identical to petitioner's claims of prosecutorial misconduct as previously discussed herein.   This Court agrees with Respondents' contention that White cannot satisfy the two-prong *Strickland* test as he has failed to establish that defense counsel's failure to object to the prosecutor's comments

24

was deficient; defense counsel did not object to the alleged improper comments by the prosecutor because he had no legitimate reason to object. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

The comments to which White takes issue were not improper. A defense objection was not required regarding comments about the bloodstains on the petitioner's shoes; the court's previous instruction that the state's expert witness could not identify the red stains on petitioner's shoes as blood in no way precluded the prosecution from arguing the logical inference that the stains on the shoes were indeed blood. Further, for the defense to have objected would have been contrary to the defenses cross-contamination theory of why the victim's DNA was found on petitioner's shoes– that Officer Allen stepped in blood at the crime scene and then inadvertently transferred the blood to White's shoes. *See* S.C.R. at 895-896, 1115-1123, 1142, 1169, 1177, 1186, 1195-1201, 1248-1252, 1494-1496.    As to the comments regarding the time of travel from Long Beach to Moss Point, an objection would have been meritless in that the prosecutor's comments were clearly based on Officer Allen's testimony that he made the drive in twenty-six minutes. *See* S.C.R. at 1179.

White's final assignment of error on the basis of ineffective assistance of counsel pertains to defense counsel's failure to object to comments by the prosecutor regarding a telephone call made from the Naval Home in Gulfport twenty minutes prior to the shooting and charged to White's credit card. As noted *supra*, there was no misconduct on the part of the prosecutor in directing the jury's attention to this phone call (*See* S.C.R. at 1510-11), and White's claim that such statement was a comment on facts not in evidence is inaccurate; the phone call was on the phone bill placed into evidence by the defense. As such, defense counsel cannot be found to be deficient for failure to object.

Finally, in regard to the ineffective assistance claims collectively, the respondents have noted that White argues that defense counsel attempts to confess ineffectiveness in his motion for new trial and in his appellant's brief.[13]  This court agrees with Respondents  that defense counsel's declaration of ineffectiveness after the jury rendered an adverse verdict for his client can be classified as gratuitous, at best.  "It is abundantly clear, however, that the guarantee [to effective assistance of counsel] does not underwrite errorless counsel, or successful counsel, or the best counsel available.  It is equally true that errors on the part of any attorney do not constitute a denial of effective assistance."  *See Odom v. United States*, 377 F.2d 853, 858 (5th Cir. 1967)(citation omitted).  The  petitioner has failed to demonstrate that defense counsel's actions and failure to object were unreasonable under the circumstances, and absent a showing of deficiency, there can be no prejudice.

And in any event, even assuming, *arguendo*, that defense counsel was deficient in  failing to object to the comments, the petitioner has not shown that but for counsel's errors, the result of the trial  would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable.  *See Vuong*, 62 F.3d at 685(there is no constitutional entitlement to error free representation.).

---

[13]In petitioner's motion for new trial, defense counsel asserts the following as one of the reasons the court should grant a new trial:

15.  The Defendant's trial counsel was ineffective for not objecting to any State's errors, comments, questions or arguments made at trial if it is determined such errors were made and no objection was made.

*See* C.P., p. 300.  In the appellant's brief, defense/appellate counsel states, "Counsel's failure to object and ask for a mistrial upon the State's presentation of the Gulfport phone call was not a 'strategy' decision.  The failure to object was a failure to use reasonable judgment which deprived White of a curative instructions [*sic*], a possible mistrial and/or failed to preserve issues for appeal.  *See* "Brief of Appellant," p. 38. ( Respondents noted that appellate briefs from both the appellant and the appellee were missing from the state court record but that they forwarded petitioner's copies of both briefs to the clerk's office along with the official state court record).

Accordingly, the state appellate court's finding that defense counsel was not ineffective was neither contrary to nor an unreasonable application of clearly established federal law[14] and the Petitioner is not entitled to any habeas review of the claims in Issue Two.

In Ground Six, White argues that while this Court may not find his assertion of errors to individually require reversal, the cumulation of errors certainly denied petitioner of a fair trial. On direct appeal, White argued cumulative error to no avail. The court of appeals addressed petitioner's argument, in pertinent part, as follows:

> . . . We must consider whether the combined errors are greater than the sum of their parts, depriving White of a fundamentally fair and impartial trial.
>
> Taking this longer view of White's claim, we remain convinced that he was afforded a fair trial. Taking the cumulative effect of his arguments, we find no basis for reversal.

*See White*, 847 So. 2d at 893.

Cumulative error has been recognized as an independent basis for habeas relief, but only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). In evaluating the sufficiency of a cumulative error charge, meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised. *Derden*, 978 F.2d at 1461. This Court has found Petitioner's assertions

---

[14] "It bears repeating that the test for federal habeas purposes is *not* whether [the petitioner made the showing required under *Strickland*]. Instead, the test is whether the state court's decision– that [the petitioner] did not make the *Strickland*-showing– was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim." *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

to be without a basis and lacking merit there is no support for a cumulative error charge. The appellate court's resolution of this issue was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law and as such habeas relief is not warranted in Ground Six.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the relief sought in the Petition of  Francis Eugene White, #K6563, seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254, be and is hereby **DENIED** and the instant Petition is hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED AND ADJUDGED** that as all the rights and liabilities as to all the parties have been resolved that a Final Judgment be entered in this cause.

**SO ORDERED AND ADJUDGED** this the ____27th_____ day of February, 2007.



**/S/   DAN M. RUSSELL, JR.**
**UNITED STATES DISTRICT JUDGE**